

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Kam Yuen,

    Plaintiff,

    v.

Bank of America, BAC Properties Loan
Servicing, LP,
GMAC Corporation, Saxon
Mortgage Corporation
Inc, Chase Properties Finance, Chase Manhattan
Mortgage Corporation, OCWEN Loan
Servicing, LLC, Aurora Loan Services, LLC,
Recontrust Company, N.A., Law Offices of Les
Zieve, Deutsche Bank National Trust, New Century
Corporation, Bank of New York
Mellon,
Mortgage Electronic Registration
Systems, Inc.,
Citibank Inc. , Executive Trustee Services, Inc.,
Quality Loan Service Corporation,    Landsafe Title
Corporation, Recontrust Company, N.A.,
The Federal Reserve Bank of San Francisco
John Does 1-25

    Defendants.

CV09-07417 PSG (FFMx)

<u>Jury Demanded</u>

**COMPLAINT**

Plaintiff, Kam Yuen ("Mr. Yuen"), brings this action to secure redress against unlawful

credit and collection practices engaged in by Defendants Bank of America, BAC Properties Loan

Servicing, LP, GMAC Deeds of trust Corporation, Saxon Deeds of trust, Inc., Chase Properties

Finance, LLC, OCWEN Loan Servicing, LLC, Aurora Loan Services, LLC, Recontrust

1

```
10/13/2009 3:44:42 PM  Receipt #: 124276
            Cashier : KPAGE [LA 1-1]
Paid by: KAM YUEN
2:CV09-07417
2010-086900        5 - Civil Filing Fee(1)
                                      $60.00
Amount :
2:CV09-07417
2010-510000        11 - Special Fund F/F(1)
                                      $190.00
Amount :
2:CV09-07417
2010-086400        Filing Fee - Special(1
                                      $100.00
Amount :                              350.00
Cash  Payment :
```

Company, N.A., Law Offices of Les Zieve, Deutsche Bank National Trust, New Century Deeds of trust Corporation, Bank of New York Mellon, Deeds of trust Electronic Registration Systems, Inc., Citibank, Executive Trustee Services, Inc., and Quality Loan Service Corporation (Collectively "Defendants").

Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA") based upon Defendants' false, misleading, and/or deceptive representation and/or implication that nonpayment of his debt would result in the sale of his property, even though sale of his property would not be lawful under the circumstances. Also, Defendants threatened and pursued an action, namely foreclosure and eviction, which could not legally be taken, even after notification that the action could not legally be taken.

The FDCPA is broad in its prohibition of unfair or unconscionable collections methods including the use of any false, deceptive or misleading statements in connection with the collection of a debt. The FDCPA also prohibits threatening legal action that cannot be taken, and the collection of any amount of money not authorized by an agreement or permitted by law.

Plaintiff alleges Defendants violated provisions of the Properties Ownership Protection Act ("HOEPA") which is codified at 15 USC sec. 1639 et seq. with the intention of protecting propertiesowners from predatory lending practices targeted at vulnerable consumers.

Plaintiff alleges Defendants violated provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 USC sec. 2601 et seq. by accepting charges for the rendering of real estate services which were in fact charges for other than services actually performed.

Plaintiff alleges Defendant violated provisions of the Federal Truth In Lending Act ("TILA"), 15 USC sec.1601 et seq. by calculating the annual percentage rate ("APR") based upon improperly calculated and disclosed amounts.

Plaintiff alleges Defendant violated provisions of the Fair Credit Reporting Act, 15 USC 1681 et seq, by wrongfully, improperly and illegally reporting negative information as to the Plaintiff to one or more Credit Reporting Agencies, resulting in Plaintiff having negative information on his credit reports and the lowering of his FICO score. Plaintiff disputed the erroneous information with Defendants, but Defendants refused to change the wrongful information reported to the Credit Reporting Agencies.

Plaintiff alleges Defendants knowingly and intentionally concealed material information from Plaintiff which is required by Federal Statutes and Regulations to be disclosed to the Plaintiff both before and at the closing. Defendants also materially misrepresented material information to the Plaintiff with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

Plaintiff alleges Defendants breached their fiduciary duties to the Plaintiff by fraudulently inducing Plaintiff to enter into a deeds of trust transaction which was contrary to the Plaintiff's stated intentions; contrary to the Plaintiff's interests; and contrary to the Plaintiff's preservation of his property.

Plaintiff alleges that Defendants have been unjustly enriched at the expense of the Plaintiff, and maintenance of the enrichment would be contrary to the rules and principles of equity.

Plaintiff alleges Defendants violated provisions of the civil RICO Act by their use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiff.

In addition, Plaintiff alleges other claims pursuant to 28 USC 1337, common law fraud, RICO violations and other state claims which gives rise to the Court's Supplemental Jurisdiction.

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§1331, 1337, 15U.S.C. 1681P, and 15 U.S.C. §1692k (FDCPA).

2. Jurisdiction is also invoked under 42 U.S.C. 1983 et seq. and 18 U.S.C. Sec. 1964 as well as the Constitution of the United States and in particular the 7th amendment as this is a "suit at common law." This Complaint is filed in propia persona pursuant to Haines vs. Kerner, 404 U.S. 519.

3. This Court has Supplemental Jurisdiction to hear the State claims raised in this complaint.

4. Venue and personal jurisdiction over Defendants in this District is proper because:

a. Mr. Yuen resides within the District;

b. Defendant Bank of America has a corporate office within the District and conducts significant business transactions within the District.

c. Defendant BAC Properties Loan Servicing, LP, has its registered agent within the District       and conducts significant business transactions within the District.

4

d. Defendant GMAC Corporation has its registered agent within the District    and conducts significant business transactions within the District.

e. Defendant Saxon Mortgage Loan, Inc. has its registered agent within the District and conducts significant business transactions within the District.

f. Defendant Chase Properties Finance, LLC as its registered agent within the District and    conducts significant business transactions within the District.

g. Defendant OCWEN Loan Servicing, LLC has its registered agent within the District and conducts significant business transactions within the District.

h. Defendant Aurora Loan Services, LLC has its registered agent within the District and conducts significant business transactions within the District.

i. Defendant Recontrust Company, N.A. conducts significant business transactions within the District.

j. Defendant Law Offices of Les Zieve has its office within the District and conducts significant business transactions within the District.

k. Defendant Deutsche Bank National Trust has its registered agent within the District and conducts significant business transactions within the District.

l. Defendant New Century Corporation has its registered agent within the District    and conducts significant business transactions within the District.

m. Defendant Bank of New York Mellon has its registered agent within the District and conducts significant business transactions within the District.

n. Defendant Mortgage Electronic Registration Systems, Inc. has its registered agent within the District and conducts significant business transactions within the District.

o. Defendant Citibank Inc. has its registered agent within the District and conducts significant business transactions within the District.

p. Defendant Executive Trustee Services, Inc., has its registered agent within the District and conducts significant business transactions within the District.

q. Defendant Quality Loan Service Corporation has its registered agent within the District and conducts significant business transactions within the District.

r. Defendant Landsafe Title has its registered agent within the District and conducts significant business transactions within the District.

s. Defendant Federal Reserve Bank of San Francisco has its registered agent within the District and conducts significant business transactions within the District and throughout the U.S.

t. Defendant Chase Manhattan Mortgage Inc. has its registered agent within the District and conducts significant business transactions within the District.

## PARTIES

4. Mr. Yuen resides within the District;

5. Defendant Bank of America has a corporate office within the District and conducts significant business transactions within the District.

6. Defendant BAC Properties Loan Servicing, LP, has its registered agent within the District and conducts significant business transactions within the District.

7. Defendant GMAC Deeds of trust Corporation has its registered agent within the District and conducts significant business transactions within the District.

8. Defendant Saxon Deeds of trust, Inc. has its registered agent within the District and conducts significant business transactions within the District.

9. Defendant Chase Properties Finance, LLC as its registered agent within the District and      conducts significant business transactions within the District.

10. Defendant OCWEN Loan Servicing, LLC has its registered agent within the District and conducts significant business transactions within the District.

11. Defendant Aurora Loan Services, LLC has its registered agent within the District and conducts significant business transactions within the District.

12. Defendant Recontrust Company, N.A. conducts significant business transactions within the District.

13. Defendant Law Offices of Les Zieve has its office within the District and conducts significant business transactions within the District.

14. Defendant Deutsche Bank National Trust has its registered agent within the District and conducts significant business transactions within the District.

15. Defendant New Century Deeds of trust Corporation has its registered agent within the District and conducts significant business transactions within the District.

16. Defendant Bank of New York Mellon has its registered agent within the District and conducts significant business transactions within the District.

17. Defendant Deeds of trust Electronic Registration Systems, Inc. has its registered agent within the District and conducts significant business transactions within the District.

18. Defendant Citibank has its registered agent within the District  and conducts significant business transactions within the District.

19. Defendant Executive Trustee Services, Inc., has its registered agent within the District and conducts significant business transactions within the District.

20. Defendant Quality Loan Service Corporation has its registered agent within the District and conducts significant business transactions within the District.

## FACTUAL ALLEGATIONS

### INTRODUCTION

The Plaintiff, Dr. Kam Yuen is a 69 year old Chinese American who has practices medicine in the United States .   He has dedicated his life to researching ways to elevate the field of medicine to eliminate pain and suffering and lectures across the U.S.  and abroad on mind/body medicine.

In2004,  Dr. Yuen began diversifying his income into the investing into real estate and by 2007had accumulated over 14 properties in the Los Angeles area, Nevada and Arizona.  Dr. Yuen maintained excellent credit and has paid over  hundreds of thousands dollars in deeds of trust or trustee deed payments up to and during the present deeds of trust or trustee deed debacle.   In an effort to maintain

8

his credit rating and retain the investment properties he has continued to pay out of his pocket even though the property values and income have greatly diminished. In short Dr. Kam Yuen has been a model American citizen who has and still is contributing greatly to the community. After doing so much business with the various banking defendants, as soon as he got behind on the deeds of trust or trustee deed payments in the last three months, most of the defendants have immediately sent notices of default and seek to profit by repossessing the properties as quickly as possible with no regard for the huge sums of interest that they have profited from the Plaintiff. Plaintiff alleges that the original loans were simply deposit credit creations (checkbook money) created by the various bank defendants after plaintiff tendered a promissory note and that the banks never loaned or risked the money that they have been collecting interest on. The defendant banks have used their relationship with the Federal Reserve to receive billions of dollars in bailout funds and then continued to and even stepped up their efforts to foreclose on Dr. Yuen and other Americans. In fact, the above defendants and other banking entities are the primary cause of the foreclosure and banking crisis that has swept through U.S. and the world due their greed. Even after the fact, these same entities are now foreclosing on millions of properties even though their own actions created the restriction in the money flow, the subsequent decrease in property values, unemployment , homelessness and resulting crimes. In effect, the defendants actions are many hundreds of times larger than Enron. Dr. Yuen has filed this complaint to address the unfairness and bring to further light the illegality of the defendants in this complaint as well as other banking and mortgage entities who only seek to profit from the problem they caused by foreclosing on property across the country.

Plaintiff alleges the above named defendants have engaged in practices that include Unjust Enrichment, RESPA violations, Fraud, Fraud in the Factum, Gross Negligence, Fair Debt Collection Practices Violations, Fair Credit Reporting Violations, Larceny, Ultra Vires, Civil Conspiracy, Truth in Lending Violations,

Common Law Fraud,  and are not the Real Parties in Interest to institute any foreclosure proceedings against Plaintiff.

## FACTUAL ALLEGATIONS

1. In 2004 Plaintiff began investing in various properties and obtained loans with the above defendants.
2. Plaintiff obtained an alleged loan in July of 2005 from  defendant Bank of America  in the amount of $183,750.00 dollars and has paid monthly payments of $734.00 totaling  over $40,000.00.
3. Plaintiff obtained an alleged loan in June of 2006 from  defendant Aurora Loan Services in the amount  of $180,000.00 dollars and has paid monthly payments of  $1,292.00 totaling  over $46.000.00.
4. Plaintiff obtained an alleged loan in  April of 2006 from  defendant Bank of America in the amount  of $131,000.oodollars and has paid monthly payments of $991.00  totaling  over $33,000 .
5. Plaintiff obtained an alleged loan in March of 2006 from  defendant Bank of America  in the amount of $959,000.00 dollars and has paid monthly payments of over $4,415.00 totaling  over $114,000 dollars..
6. Plaintiff obtained an alleged loan in July of 2006 from  defendant Bank of America in the amount of $980,000.00 dollars and has paid monthly payments of $7,298.00 totaling  over $91,000.00
7. Plaintiff obtained an alleged loan in July of 2006 from  defendant Bank of America in the amount of $100,000.00 dollars and has paid monthly payments of $552.00.00 totaling  over $18,000.00
8. Plaintiff obtained an alleged loan in July of 2006 from  defendant Bank of America in the amount of $100,000.00 dollars and has paid monthly payments of $790.00.00 totaling  over $40,000.00
9. Plaintiff obtained an alleged loan in June of 2006 from  defendant Aurora Loan Services in the amount  of $191,200.00 dollars and has paid monthly payments of  $1,442.00 totaling  over $51.000.00.
10. Plaintiff obtained an alleged loan in June of 2006 from  defendant Aurora Loan Services in the amount  of $47,800.00 dollars and has paid monthly payments of  $548.00 totaling  over $19.000.00.
11. Plaintiff obtained an alleged loan in June of 2006 from  defendant Aurora Loan Services in the amount  of $22,500.00 dollars and has paid monthly payments of  $219.00 totaling  over $7000.00.
12. Plaintiff obtained an alleged loan in June of 2006 from  defendant GMAC in the amount  of $84,250.00 dollars and has paid monthly payments of  $941.00 totaling  over $84.000.00.

13. Plaintiff obtained an alleged loan in August of 2006 from defendant Saxon Mortgage in the amount of $315,980.00 dollars and has paid monthly payments of $1,955.00 totaling over $44,000.00.

14. Plaintiff obtained an alleged loan in April of 2004 from defendant GMAC in the amount of $495,000.00 dollars and has paid monthly payments of $3,679.00 totaling over $91.000.00

15. Plaintiff obtained an alleged loan in June of 2006 from defendant Chase Manhattan Mortgage in the amount of $292,500.00 dollars and has paid monthly payments of $2,137.00 totaling over $8134.000.00.

16. Aggregately Plaintiff has paid over one million dollars to the various listed defendants.

17. In July of 2009 Plaintiff sent a document titled a Qualified Written Request ( attached Exhibit A) to each of the above Defendants expecting concrete answers to any improprieties regarding the servicing of the alleged loans and defendants rights in regard to the legality of their business practices.

18. None of the defendants responded with adequate answers or supplied the bulk of the documents requested.

19. Instead, the response from Defendant Aurora Loan Services has been a Notice of Default.

20. Instead, the response from Defendant Bank of America has been a Notice of Default.

21. Instead, the response from Defendant GMAC has been a Notice of Default.

22. Instead, the response from Defendant Saxon Mortgage Company has been a Notice of Default.

23. Instead, the response from Defendant Chase Manhattan Mortgage has been a Notice of Default.

24. Instead, the response from Defendant Ocwen Loan Servicing has been a Notice of Default.

25. Upon information and belief, Defendant Bank of America does not possess a valid note or deed of trust or mortgage.

26. Upon information and belief, Defendant GMAC does not possess a valid note or deed of trust or mortgage.

27. Upon information and belief, Defendant Aurora Loan Services does not possess a valid note or deed of trust or mortgage.

28. Upon information and belief, Defendant Saxon Mortgage Company does not possess a valid note or deed of trust or mortgage.

29. Upon information and belief, Defendant Ocwen Loan Servicing does not possess a valid note or deed of trust or mortgage.

30. Upon information and belief, Defendant Recontrust N.A. does not possess a valid note or deed of trust or mortgage.

31. Upon information and belief Defendant Bank of America did not tender full consideration for the promissory note and Plaintiff was led to believe that Defendant Bank of America risked their own money or monies they actually possessed in order to lend.

32. Upon information and belief Defendant Saxon Mortgage did not tender full consideration for the promissory note and Plaintiff was led to believe that Defendant Saxon Mortgage risked their own money or monies they actually possessed in order to lend.

33. Upon information and belief Defendant Aurora Loan Services did not tender full consideration for the promissory note and Plaintiff was led to believe that Defendant Aurora Loan Services risked their own money or monies they actually possessed in order to lend.

34. Upon information and belief Defendant Chase Manhattan Mortgage did not tender full consideration for the promissory note that Plaintiff was led to believe that Defendant Chase Manhattan Mortgage risked their own money or monies they actually possessed in order to lend.

35. Upon information and belief Defendant _____ did not tender full consideration for the promissory note that Plaintiff was led to believe that Defendant _____ risked their own money or monies they actually possessed in order to lend.

36.

37. Upon information and belief, Defendant Recontrust N.A. does not possess and never had a proper assignment that gives them the power to foreclose on Plaintiff's property.

38. Upon information and belief, Defendant Deutsche Bank National Trust, does not possess and never had a proper assignment that gives them the power to foreclose on Plaintiff's property.

39. Upon information and belief, Defendant Bank of America does not possess and never had a proper assignment that gives them the power to foreclose on Plaintiff's property.

40. Upon information and belief, Defendant Aurora Loan Services does not possess and never had a proper assignment that gives them the power to foreclose on Plaintiff's property.

41. Upon information and belief, Defendant GMAC does not possess and never had a proper assignment that gives them the power to foreclose on Plaintiff's property.

42. Upon information and belief, Defendant Saxon Mortgage Company does not possess and never had a proper assignment that gives them the power to foreclose on Plaintiff's property.

43. Upon information and belief, Defendant Mortgage Electronic Registration Systems Inc. does not possess and never had a proper assignment that gives them the power to foreclose on Plaintiff's property.

44. Upon information and belief, Defendant Ocwen Loan Servicing does not possess and never had a proper assignment that gives them the power to foreclose on Plaintiff's property.

45. Upon information and belief, Defendant Quality Loan Service Corporation does not have a proper assignment that gives them the power to foreclose on Plaintiff's property.

46. Upon information and belief, Defendant Executive Trustee Services does not have a proper assignment that gives them the power to foreclose on Plaintiff's property.

47. Upon information and belief, Defendant Landsafe Title Inc. does not have a proper assignment that gives them the power to foreclose on Plaintiff's property.

48. Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans knew or should have known that the verbal statement that they would lend the plaintiff "lawful money of the United States" at annual interest rates were false representations that was made recklessly and with deliberate and intentional disregard for the rights of the plaintiff.

49.    Relying on these false representations, the plaintiff was induced into signing deeds of trusts and mortgages . Since the dates of the loans, the plaintiff has made payments of principal and interest totaling over one million dollars.

50.    After the plaintiff had signed the deeds of trust, note, security agreement ,Defendants' Chase Manhattan Mortgage,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans did fail to lend the plaintiff lawful money of the United States for the full value of the loan.  For the actual lawful money which the bank risked for the loan, estimated to be no more than 10% of the loan's face value, the bank did charge  an interest rate that was 10 times greater than what was authorized in the contract, and did this deliberately to the detriment and damage of the plaintiff.

51.    In carrying out their commitment to lend lawful money of the United States, Defendants' Chase Manhattan Mortgage,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans did write  checks for the sum of loan amounts. Defendants' Chase Manhattan Mortgage,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans in writing these checks, did deliberately make  loans beyond their customers' deposits.

52.    The checks) which Defendants' Chase Manhattan Mortgage,  ,Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans its officers wrote were not backed by or redeemable in Federal Reserve Notes, coins or lawful money of the United States for their full face value.

53.      The Defendants' Chase Manhattan Mortgage, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans its officers did use the U.S. Mails more than twice since the date of loan to collect money on this debt. Plaintiff did not become aware of the fraudulent activity of the defendants until on or around 9/29/09.

54.      The only consideration which the bank provided for this loan was a book entry demand deposit which the bank itself created effortlessly and at virtually no cost to itself. The bank in stamping its own check "Paid," did make a false representation as it merely transferred some book entries and never intended to redeem this check in lawful money of the United States.

55.      The averments of the previously numbered paragraphs are restated by reference herein. The Federal Reserve Bank and the Board of Examiners for this bank knew or should have known that the Defendants' Chase Manhattan Mortgage, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans made loans to the plaintiff by writing a check on the alleged loan dates and that the bank was charging interest on nonexistent funds. The Federal Reserve Bank and the Board of Examiners for the F.R. Bank are a party to these false representations as they were a party to the transfer of book entries with the full knowledge that the bank did not have in its possession lawful money to redeem its check and they did all this to the detriment and damage of the plaintiff. Their collective activities in passing this check is part of a planned scheme.

56.        In addition to this, the Federal Reserve Bank and the Board of Examiners along with John and Jane Does, whose names are unknown at this time, are a party to a conspiracy to do all of the following: Keep interest rates artificially high, contract credit to create unemployment and depress housing prices, and to select and pressure the bank to foreclose on the plaintiff's property all as part of a preplanned conspiracy to foreclose on millions of Americans and for these banking cartels to repossess and own millions of homes in the nation including plaintiff Kam Yuen's properties. All of this illegal activity is being done in violation of Federal Racketeering laws, Federal Antitrust laws, and in violation of the plaintiffs Constitutional rights, particularly the 5th, 7th, 9th and 14th amendments.

*

Defendants_____ have sent a notices of default(see attached exhibits D,E,F,G,H,I,L )to plaintiff



## COUNT 1-  CIVIL CONSPIRACY

10. Plaintiff sent to Defendants Aurora Loan Services, Chase Manhattan MortgageBank of America,Ocwen Loan Services, GMAC, Saxon Mortgage Company and BAC a Qualified Written Request(see Exhibit A) and Request for validation of the mortgage and deed of trust.

11. Upon information and belief at the time Defendants Mortgage Electronic Systems Inc, Recontrust N.A.Bank of America, Aurora Loan Services, GMAC, Saxon Mortgage Company, Deutsche Bank National Trust, filed Notices of Default, did not have the legal right to

foreclose on Dr. Yuen because the deeds of trust and notes had never been properly assigned to their clients and Dr. Yuen signature had been obtained through misrepresentation and fraud.

12. Upon information and belief and research no proper assignment is showing at the County Recorder of Deeds from any party.

15 Upon information and belief none of the defendants have ever had a valid note and thereby were not holders or Holders in due course of the note in Dr. Yuen's closings.

16 Defendants have been aware of this and have continued to attempt to collect anyway.

17 These Defendants Mortgage Electronic Registration Systems, Inc, Citibank, Executive Trustee Services, Inc, Quality Loan Service Corporation, Landsafe Title Corporation, and Recontrust Company, N.A.together have pursued and are pursuing the sale of Dr.Yuen's properties while representing their actions to be lawful and that they as trustee had the present right, ownership and authority to pursue both foreclosure and eviction.

18. As will be further shown through discovery, Defendants Mortgage Electronic Registration Systems, Inc, Citibank, Executive Trustee Services, Inc, Quality Loan Service Corporation, Landsafe Title Corporation, and Recontrust Company, N.A., conspired to wrongfully foreclose on Dr. Yuen's properties.

23. Dr. Yuen contends that Defendants Mortgage Electronic Registration Systems, Inc, Citibank, Executive Trustee Services, Inc, Quality Loan Service Corporation, Landsafe Title Corporation, and Recontrust Company, N.A. all lacks standing to initiate a foreclosure and that any sale will be void or at least voidable and that no title can pass to trustees or the buyers, as there is no legal title to pass to it from the foreclosing entity.

24. Dr. Yuen alleges that the actions of the Defendants Mortgage Electronic Registration Systems, Inc,        Citibank,  Executive Trustee Services, Inc, Quality Loan Service Corporation, Landsafe Title Corporation, and  Recontrust Company, N.A. and their agents, employees and servants were wrongful and tortious.

26. Dr. Yuen alleges that the actions of attempting to sell his properties is a violation of law, wrongful and tortious and that Defendants Mortgage Electronic Registration Systems, Inc,        Citibank,  Executive Trustee Services, Inc, Quality Loan Service Corporation, Landsafe Title Corporation, and  Recontrust Company, N.A.hold no title to his properties, and that its actions constitute, negligence, wantonness, abuse of process and slander of title.

27. Dr. Yuen alleges that the actions of Defendants Mortgage Electronic Registration Systems, Inc,        Citibank,  Executive Trustee Services, Inc, Quality Loan Service Corporation, Landsafe Title Corporation, and  Recontrust Company, N.A.and their employees, agents and servants was a civil conspiracy to deprive Dr. Yuen of his property. Additionally, above named defendants are in various joint ventures wherein these parties are engaged in a civil conspiracy to falsify legal documents for the purpose of foreclosing on the properties of Dr. Yuen under a colorable title of right for the purpose of generating profits and income from the act of depriving plaintiff of his properties and for the purpose of unjustly enriching the participants of the joint venture at the expense of the unsuspecting and unknowing.

28.

29.    Plaintiff is the nominal payor on each of the   promissory notes.  The   Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans are financial institutions that were

paid fees to pose as a residential deeds of trust Lenders, when in fact the source of loan funds and the actual Lenders (Investors in Certificates) and underwriter (Deeds of trust Aggregator and Investment Banker) were other parties whose identities and receipt of fees and profits were withheld from Plaintiff at Closing and despite  their receipt of a detailed Qualified Written Requests (see attached Exhibit B) continue to be withheld from Plaintiff by the Defendants contrary to the requirements of Federal Law and applicable State Law.

30.  Unknown to Plaintiff, the  Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans, acting as principal in its relationships with the "independent appraiser" of the property and the deeds of trust brokers and deeds of trust originator, induced the Plaintiff into a transaction that did not and could not meet normal underwriting standards for a residential deeds of trust. The  Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans posed as a conventional deeds of  trust Lenders thus leading Plaintiff to reasonably believe that the Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans, the deeds of trust brokers, and the loan originator had an interest in the success( repayment of the loan) of the transaction that Plaintiff was induced to believe was being executed at the time of the "closing" of the subject loan transaction.

31. In fact, the   Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans, deeds of trust brokers, appraiser, loan originator, title agent, escrow agent and Trustee on the Deed of Trust, had no financial stake (i.e., liability) in the transaction and no interest other

than obtaining Plaintiff's signature on a "loan" that could never be repaid, contrary to representations and assurances from the conspiring participants in this fraudulent scheme. In fact, the "Appraisal" was intentionally and knowingly inflated along with other loan data to justify the closing of the "loan transaction." Plaintiff relied upon the due diligence of the apparent "Lenders" (i.e., actually the Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans) in executing the and accepting the closing documents.

32. In fact, no "Lenders" as such were involved in the closing in the sense of an entity performing due diligence and evaluation pursuant to national standards for underwriting and evaluating risk of loaning money in a residential loan closing. Thus no bank or other financial institution actually performing under the standards, rules and regulations governing such institutions was the "Lenders" which is the basis for Plaintiff's cause of action for usury, to wit: that the inflated appraisal added an undisclosed cost to the loan which when added to the other terms, disclosed and undisclosed, and amortized over the real expected life of the "loan" exceeds the limits set by. the State legislature for usury and is not subject to exemption because the presence of a financial institution in the transaction was a ruse in which the form of the transaction covered over and mislead the Plaintiff as to the real parties in interest and the fees generated by the production of the subject "loan transaction."

33. Their purpose was solely to collect fees, rebates, kickbacks and profits that were never disclosed to Plaintiff and have only recently been discovered by Plaintiff through consultation with experts in securitization of residential deeds of trust loans, and diligent research including the filings of some parties with the Securities and exchange Commission which disclose the normal manner of operating this fraudulent scheme.

19

34. The Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans was named as the Payees on the subject promissory notes and the beneficiaries under the deeds of trust terms allegedly securing the performance under the subject notes. The "Trustees" was named as the Trustee on the Deed of Trust executed at the time of the alleged "closing" of the "loan transaction." In accordance with State law, the Deed and terms of security were recorded in the county records.

35. Notwithstanding the above, and without the knowledge of the Plaintiff, the Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans had entered into Assignment and Assumption Agreements with one or more parties and Pooling and Service Agreements with one or more parties including but not limited to the deeds of trust aggregator prior to or contemporaneously with the "Closing" of the subject "loan transaction." Under the terms of these agreements, the Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans received a sum of money, usually on receiving an application for a loan equal to the gross amount of the loan sought by Plaintiff plus a fees which were allocated to the subject loan transactions.

36. Contrary to the documents presented before and during the "closing" of the "loan transaction" the Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans were neither the source of funding nor the "Lenders." Thus at the time of recording, the source of funding and the "Lenders" was a different entity than the nominal deeds of truste or beneficiary

under the deed of trust and was neither named nor disclosed in any fashion. The security for the "loan" thus secured an obligation that had been paid in full by a third party. Said third parties were acting as a financial institution or "Lenders" without even having been chartered or registered to do so despite regulations to the contrary from laws and rules of State or Federal authorities and/or agencies.

37. Some form of documentation represented by the Defendants Chase Manhattan Mortgage, Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans to the Deeds of trust Aggregator was presented before or contemporaneously with the "closing" of the loan" transaction. In some cases the documentation included actual copies of the documents presented at "Closing." In most cases it consisted of either forged blank notes or vague descriptions of the content of the notes that were placed into the pool of assets that would be "securitized." Plaintiff has discovered numerous cases in which the "loan closing" either did not take place at all or included documentation substantially different than the original offer and acceptance and substantially different than what could have been reported to the Deeds of trust Aggregator prior to the "closing." Plaintiff has discovered numerous cases in which foreclosure has proceeded despite the fact that no loan closing was ever consummated, no papers were ever signed, or the loans were properly rescinded properly under law.

38. Plaintiff does not know what version of documentation was presented to the Deeds of trust Aggregator and if the Deeds of trust Aggregator took one or more varying descriptions of the alleged "loan documents" into more than one pool of assets which was eventually sold for the purpose of securitizing the assets of the pool which included the subject loan transaction either

once or more than once. Plaintiff has requested such information only to be met with complete silence from the Defendants. (see Attached Exhibit B"Qualified Written Request)

39. Upon on information and belief there is no valid assignment of the subject deeds of trust in the county records, but there is a non-recorded Pooling and Services" Agreement and a non-recorded Assignment and Assumption Agreement which appears to substitute the Trustee over the pooled assets for the nominal Trustee in the Deed of Trust. The powers of this second Trustee were in turn transferred to either a Trustee for a Special Investment Vehicle (which performed the accounting and reporting of the pool assets) or to an investment bank Collateral Debt Obligation manager whose department performed the accounting and reporting of the pool assets. The reporting of the pool assets consisted principally of descriptions of the notes "signed" by borrowers and limited descriptions of the general terms of the note such that the note appeared to be more valuable than the initial terms of payment by the "borrower."

40. The note from the subject "loan transaction" was eventually allocated into a new corporation (Special Purpose Vehicle) formed for the express purpose of holding the pooled assets under certain terms. The terms included the allocation of payments from one note to pay any deficiency in payment of another note in unrelated "loan transactions" contrary to the terms of each such note which required payments to be allocated to the principal, interest, escrow and fees associated with only that specific "loan transaction." Whether such "deficiency" was caused by the difference between the higher general terms of description of the note or the lower actual payment requirements from the "borrower" is not known, despite numerous requests for accounting and the refusal of Defendants to provide any such information.

41. The Investment Banking firm arranged through payment for a false inflated appraisal of the certificates and/or issuer of the certificates that would be sold to investors in much the same way as it had procured the false appraisal of the property that "secured" the "loan transaction." In addition, insurance was purchased from proceeds of this transaction, credit default swaps were purchased from proceeds of this transaction, the investors investments were "oversold" to create a reserve pool from which the SPV could pay deficiencies in payments, and the SPV created cross-collateralization agreements and overcollateralization of the pool assets to assure payments to the investors, thus creating co-obligors on the payment stream due from the Plaintiff on the subject "loan transaction."

42. The pool assets, including the Plaintiff's subject "loan transaction "were pledged completely to the owners of the "asset-backed securities." All the certificates were then transferred to a Sellers who in turn sold the certificates in varying denominations, each of which had slightly different terms depending upon which segment of the pool (tranche) secured the investment.

43. If there is a holder in due course of the Plaintiff's note arising from the subject "loan transaction" it is the investors who purchased said securities (certificates). Some of said securities are held by the original purchaser thereof, others were sold at weekly auction markets, others were paid by re-sales of property that was "secured", others were paid from prepayments, others were paid by sale at full or partial price to the investment bank that originated the entire transaction, some of which might be held by the Federal Reserve as non-recourse collateral, and others might have been paid by one or more of the insurance, credit default swaps, cross guarantees or cross collateralization of the segment of the pool that secured the relevant investor who owned certificates backed by a pool of assets that included the subject "loan transaction."

44. It is doubtful that any of the Defendants have any knowledge or have made any effort to determine whether the putative holders in due course have been paid in whole or in part. It can only be said with certainty that these Defendants seek to enforce loan documents for which they have already been paid in full plus illegal fees for participating in an illegal scheme. These Defendants seek to add insult to injury by demanding ownership of the property in addition to the receipt of payment in full long before any delinquency or default even allegedly occurred.

45. In order for these Defendants to maintain legal standing in connection with the subject loan transaction they are required to show the entire chain of title of the note and the entire chain of title of the deeds of trust and that they have loaned and risked the full amount of the promissory notes tendered to them by plaintiff. They have refused to do this despite numerous requests, leading Plaintiff to conclude that the Defendants cannot produce such evidence of a complete chain of title or are intentionally withholding the information that would show breaks in such chain.

46. Plaintiff is left in the position of being in an adversary proceeding with ghosts. While these Defendants have informally offered or considered providing indemnification for any third party claims, the fact remains that any relief awarded these defendants, any standing allowed to these defendants would expose the Plaintiff to multiple claims and suits from an unknown number of parties and entities that all claim, possibly correctly, to the holders in due course. Any grant of certificate of title to an entity other than Plaintiff or the nominal deeds of truste creates an incurable defect in title.

47. Upon information and belief, there is no recording of any document in the county records which predates the Defendants' attempt to initiate foreclosure and/or eviction or which would authorize them to proceed.

48. Significance of REMIC - - Deeds of trust backed Securities (MBS) Certificates are "pass through Certificates," where the Trust has elected to be treated as a Real Estate Deeds of trust Investment Conduit ("REMIC") to enjoy the tax exempt status allowed under 15 U.S.C. §§806A-G. REMIC regulations impose very strict limitations as to the nature of the investments a REMIC trust may make (i.e. "permitted investments") and transactions which it may not undertake (i.e. "prohibited transactions"). Any violation of REMIC regulations has significant tax implications for the Trust, as well as all Certificate holders. For example, any income realized by the Trust from a "prohibited transaction" is taxed at 100%. The REMIC regulations also provide that any entity that causes the REMIC regulations to be violated is liable to the Trust and the Certificate holders for the entire amount of the tax. Only income from "qualified deeds of trusts" and "permitted investments" may enter a REMIC trust.

49. A "qualified deeds of trust" is an obligation (i.e. deeds of trust) which is principally secured by an interest in real property which (1) was transferred to the Trust on the startup date, (2) was purchased by the REMIC Trust within 3 months after the startup date or (3) any qualified replacement deeds of trust.

Permitted investments are limited to:

a. Cash Flow Investments (i.e. temporary investment where the Trust holds money it has received from qualified deeds of trusts pending distribution to the

Certificateholders);

b. Qualified Reserve Assets (i.e. any intangible property which is held for investment and is part of a reasonably required reserve to provide for full payment of expenses of the REMIC or amounts due on regular interests in the event of defaults on qualified deeds of trusts or lower than expected returns on cash flow investments. These investments are for very defined purposes and are to be passive in nature. They must be "reasonably required."

c. Liquidation Proceeds from "foreclosed property" which is acquired in connection with the default or imminent default of a "qualified deeds of trust" held by the Trust.

50. In order to maintain the REMIC status, the Trustee and the Servicers must ensure that the REMIC receives no income from any asset that is not a "Qualified Deeds of trust" or a "Permitted Investment." 26 U.S.C. § 806F(a)(2)(B). Prohibited Transactions include the disposition of a qualified deeds of trust (except where the disposition is "incident to" the foreclosure, default, or imminent default of the deeds of trust); or the receipt of any income from an asset that is not a Qualified Deeds of trust or a Permitted Investment. 26 U.S.C. § 860F(a)(2)(B). Prohibited Transactions are taxed in an amount 100% of the REMIC's net income from such prohibited transaction. 26 U.S.C. § 860F(a)(1).

51. Contributions of any "property" — e.g., cash, deeds of trusts, etc. — made to the REMIC are taxed at 100% of the contribution, except for the four following exceptions:

a. Contributions to facilitate a "clean up call" (i.e. the redemption of a class of regular interest, when by reason of prior payments with respect to those interests the administrative costs associated with servicing that class outweigh the benefits of maintaining the class). Reg. § 1.860G-2(j)(1).

b. Any cash payment in the nature of a guarantee, such as payments to the REMIC Any violation of REMIC regulations will defeat the privileged tax status and will subject the REMIC to 100% taxation, plus penalties and interest. These taxes and penalties are ultimately borne by the Certificate holders. under a surety bond, letter of credit or insurance policy.

c. Any cash contribution during the three month period after the start-up day; and

d. Any cash contribution to a qualified reserve fund made by a holder of a residual interest.

52. On a monthly basis, the Investment Banking firm and/or its agents, servants or employees compiled, individually and in concert, oversaw and approved all the information contained in the Distribution Reports and electronically sent same to certain parties. The data regarding the number of bankruptcies, aggregate Special Servicing Fees, and aggregate Trust Fund Expenses was routinely incomplete, false, and/or misleading.

53. The Distribution Reports are supposed to accurately reflect the "financial health of the trust," and provide Certificate holders ,with important data such as the number of loans in bankruptcy, the aggregate amount of special servicing fees, and the aggregate amounts of trust fund expenses. Each and every one of these categories is essential for to assess its profit and loss potential in the REMIC entity. Furthermore, this data is used by bond rating agencies to assess the value of the Certificates.

54. Based upon the filings and information of the Plaintiff it appears that no accurate accounting has ever been presented to anyone and that therefore the identity and status of any putative holder in due course is completely shrouded in secrecy enforced by these Defendants, their agents, servants and employees. Unreported repurchases of certificates or classes of

certificates would and did result in a profit to the REMIC that went unreported, and which was not credited to Borrowers where the repurchase was, as was usually the case, the far less than the original investment. While the Plaintiff would never have entered, into a transaction in which the true nature of this scheme was revealed, any profits, refunds, rebates, fees, points, costs or other income or gain should be credited on some basis to said borrowers including Plaintiff herein.

55. The end result of the false and misleading representations and material omissions of Defendants as to the true nature of the deeds of trust loan actually being processed, which said Defendants had actual knowledge was in direct conflict with the original Uniform Residential Loan Application, early TIL, and Plaintiff stated intentions and directions to said Defendants, at the time of original application for the loan, fraudulently caused Plaintiff to execute predatory loan documents.

56. At no time whatsoever did Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans, Chase Mahattan Mortgage, Quality Loan Servicing, ever advise Plaintiff that:

(a) the deeds of trust loan being processed was not in his best interest;

(b) the terms of the deeds of trust loan being processed were less favorable than the fixed-rate loan which Defendants previously advised Plaintiff that they qualified for;

(c) that the adjustable rate deeds of trust loan was an inter-temporal transaction (transaction where terms, risks, or provisions at the commencement of the transaction differ at a later time) on which Plaintiff had only qualified at the initial "teaser" fixed rate but had not and could not qualify for the loan once the interest rate terms changed after year 2;

(d) that as a result of the change in interest rate after year 2 that Plaintiff would not be able to meet his financial obligations on the loan given the downturn in the market, loss of property values and unemployment all effects of defendants behavior in originating loans and operations in the secondary market.

(e) that Plaintiff would likely be placed in a position of default, foreclosure, and deficiency judgment upon not being able to meet his increased loan obligations once the fixed rate interest period expired and the adjustable rate applied;

(f) that the originating "lenders", had no intention of retaining ownership interest in the deed of trust loan or fully servicing same and in fact may have already presold the loan, prior to closing, to a third party deeds of trust aggregator;

(g) that the deed of trust loan was actually intended to be repeatedly sold and assigned to multiple third parties, including one or more deeds of trust aggregators and investment bankers (including but not limited to Defendants DOES 1-10), for the ultimate purpose of bundling the Plaintiff deeds of trust with hundreds or perhaps thousands of others as part of a companion, support, or other tranche in connection with the creation of a REMIC security known as a Collateralized Deeds of trust Obligation ("CMO"), also known as a "deeds of trust-backed security" to be sold by a securities firm (and which in fact ended up as collateral for Asset-Backed Securities Certificates, created the same year as the closing);

(h) that the deeds of trust instrument and Promissory Note may be sold, transferred, or assigned separately to separate third parties so that the later "holder" of the Promissory Note may not be in privity with or have the legal right to foreclose in the event of default;

(i) that in connection with the multiple downline resale and assignment of the deeds of trust and Promissory Note that assignees or purchasers of the Note may make "paydowns" against the Note which may effect the true amount owed by the Plaintiff on the Note;

(j) that a successive assignee or purchaser of the Note and Deeds of trust may not, upon assignment or purchase, unilaterally impose property insurance requirements different from those imposed as a condition of the original loan (also known as prohibition against increased forced-placed coverage) without the Plaintiff' prior notice and consent.

57. As a result of the closing and in connection therewith, Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans placed the Plaintiff into a sub-prime adjustable rate deeds of trust program, with Defendants intentionally misleading Plaintiff and engaging in material omissions by failing to disclose to Plaintiff the fact that the nature of the deeds of trust loan application had been materially changed without Plaintiff' knowledge or consent and that Plaintiff was being placed into an adjustable rate deeds of trust program despite not being fully qualified for such a program.

58. Prior to the closing, Defendants Mortgage Electronic Systems Inc, Bank of America, Aurorá Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans failed to provide to Plaintiff the preliminary disclosures required by the Truth-In-Lending Act pursuant to 12 CFR (also known as and referred to herein as "Regulation Z) sec. 226.17 and 18, and failed to provide the preliminary disclosures required by the Real Estate Settlement Procedures Act ("RESPA") pursuant to 24 CFR sec. 3500.6 and 35007, otherwise known as the GFE.

59. Defendant Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans also intentionally failed and/or refused to provide Plaintiff with various disclosures which would indicate to the Plaintiff that the consumer credit contract entered into was void, illegal, and predatory in nature due in part to the fact that the final TIL showed a "fixed rate" schedule of payments, but did not provide the proper disclosures of the actual contractually-due amounts and rates.

60. Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans failed and/or refused to provide a HUD-1 Settlement Statement at the closing which reflected the true cost of the consumer credit transaction. As Defendants failed to provide an accurate GFE or Itemization of Amount Financed ("IOAF'), there was no disclosure of a Yield Spread Premium ("YSP", which is required to be disclosed by the Truth-In-Lending Act) and thus no disclosure of the true cost of the loan.

61. As a direct and proximate result of these failures to disclose as required by the Truth-In—Lending Act, Defendant DEEDS OF TRUST BROKER received a YSP in a substantial amount of without preliminary disclosure, which is a per se violation of 12 CFR sec. 226.4(a), 226.17 and 18(d) and (c)(1)(iii). The YSP raised the interest rate which was completely unknown to or approved by the Plaintiff, as they did not received the required GFE or IOAF.

62. In addition, the completely undisclosed YSP was not disclosed by Defendants in their broker contracts, which contract was blank in the area as to fees to be paid to Defendants. This is

an illegal kickback in violation of 12 USC sec. 2607 as well as State law which gives rise to all damages claims for all combined broker fees, costs, and attorneys' fees.

63. The Amount Financed within the TEL is also understated which is a material violation of 12 CFR sec. 226.17 and 18, in addition to 15 USC sec. 1602(u), as the Amount Financed must be completely accurate with no tolerance.

64. Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans were under numerous legal obligations as fiduciaries and had the responsibility for overseeing the purported loan consummation to insure that the consummation was legal, proper, and that Plaintiff received all legally required disclosures pursuant to the Truth-In-Lending Act and RESPA both before and after the closing.

65. Plaintiff, not being in the consumer lending, deeds of trust broker, or residential loan business, reasonably relied upon the Defendants to insure that the consumer credit transaction was legal, proper, and. complied with all applicable laws, rules, and Regulations.

66. At all times relevant hereto, Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four (4) installments and was initially payable to the person the subject of the transaction, rendering Defendants "creditors" within the meaning of the Truth-In-Lending Act, 15 U.S.C. sec. 1602(f) and Regulation Z sec. 226.2 (a)(17).

67. At the closing of the subject "loan transaction", Plaintiff executed Promissory Notes and Security Agreements in favor of Defendants as aforesaid. These transactions, designated by Defendants as a Loan, extended consumer credit which was subject to a finance charge and which was initially payable to the Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans. As part of the consumer credit transaction the subject of the closing, Defendants retained a security interest in the subject property which was Plaintiff' principal residential dwelling.

68. Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans engaged in a pattern and practice of defrauding Plaintiff in that, during the entire life of the deeds of trust loan, Defendants failed to properly credit payments made; incorrectly calculated interest on the accounts; and have failed to accurately debit fees. At all times material, Defendants had actual knowledge that the Plaintiff accounts were not accurate but that Plaintiff would make further payments based on Defendants' inaccurate accounts. Plaintiff made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiff' accounts.

69. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff overpaid in interest. Defendants also utilized amounts known to the Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure. Defendants' violations were all material in nature under the Truth-In-Lending Act.

70. Said violations, in addition to the fact that Plaintiff did not properly receive Notices of Right to Cancel, constitute violations of 15 USC sec. 1635(a) and (b) and 12 CFR sec. 226.23(b), and are thus a legal basis for and legally extend Plaintiff right to exercise the remedy of rescission.

71. Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans assigned the Note and deeds of trust to parties who did not take these instruments in good faith or without notice that the instruments were invalid or that Plaintiff had a claim in recoupment. Pursuant to state and federal lawand (f), Defendants are not a holder in due course and is thus liable to Plaintiff, individually, jointly and severally.

72. On information and belief and given that the consumer credit transaction was an inter-temporal transaction with multiple assignments as part of an aggregation and the creation of a REMIC tranche itself a part of a predetermined and identifiable CMO, all Defendants shared in the illegal proceeds of the transaction; conspired with each other to defraud the Plaintiff out of the proceeds of the loan; acted in concert to wrongfully deprive the Plaintiff of his properties; acted in concert and conspiracy to essentially steal the Plaintiff properties and/or convert the Plaintiff properties without providing Plaintiff reasonably equivalent value in exchange; and conducted an illegal enterprise within the meaning of the RICO statute.

73. On information and belief and given the volume of residential loan transactions solicited and processed by the Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans, Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan

Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans have engaged in two or more instances of racketeering activity involving different victims but utilizing the same method, means, mode, operation, and enterprise with the same intended result.

### *Industry History Which Forms Basis for Underlying Claims*

74. **Liability of Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans is based upon both their gross departure from federal lending standards as well as one of largest financial scandals ever perpetuated by various entities which are directly and indirectly involved in the lending industry. The foregoing conduct, (which is specifically described infra), has caused Plaintiff to obtain loans which; 1) were originated based upon false and inflated values, 2) required payments that Plaintiff was not able to consistently make, and, 3) resulted in Plaintiff being  in the process of losing possession of his properties.**

75. The citizens of the State of California and Nevada are some of the hardest hit victims of the nationwide deeds of trust crisis. The main causes of this crisis are an industry-wide departure from federal lending standards as well as the greed of Wall Street financial institutions who have chosen to abuse the non judicial foreclosure procedures codified in California Civil Code Section 2924a in order to illegally claim certain taxation benefits provided for in Internal Revenue Code Section 1080.

76. Through departing from federal lending standards and blatantly violating these statutes, Defendants have been able to; 1) claim that Plaintiff properties have been validly sold at a public foreclosure auction that never actually took place, 2) record title issued by foreclosure trustees who as a matter of practice falsify deeds after the sale to make it appear that a public foreclosure auction took place, and, 3) obtain a full satisfaction of the loan balance which encumbers Plaintiff properties through falsely claiming the tax benefits delineated in Internal Revenue Code Section 1080 and by avoiding capital gains taxes in reselling the property.

### *History of Federal Lending Guidelines*

77. In December of 1992, the Office of the Comptroller Currency , the Federal Reserve, the Federal Deposit Insurance Corporation and the Office of Thrift Supervision adopted real estate lending standards pursuant to the Federal Deposit Insurance Corporation Improvement Act of 1991. These standards established loan to value limits for residential lending. Mainly, residential real estate loans were; 1) not to exceed 90% of a property's value, and, 2) required evidence of a borrower's ability to perform under the loan. The purpose of the Act was to strength and stabilize the country's real estate market which at the time had fallen into a deep slump.

### *The Departure from Federal Lending Guidelines*

78. As time went on, the United States begin experiencing robust. economic growth. As the economy improved, so did the real estate market. As a result of rapid growth in the lending

arena, the industry was no longer dominated by banks that lent funds on deposit (hereinafter "direct lenders"). Instead, it spawned more and more businesses that would act as intermediaries between borrowers and several potential lenders (hereinafter after "deeds of trust brokers").

79. The proliferation of deeds of trust brokers created a highly competitive landscape in the lending industry. As such, in order to keep profits high, direct lenders and deeds of trust brokers alike began to relax the standards necessary for a borrower to obtain a loan (hereinafter "underwriting guidelines"). As a direct result, loan origination began to rapidly depart from the federal guidelines discussed above. Unfortunately, the federal government did nothing to curtail this practice.

### The Real Estate Boom Fueled by REMICS

80. As a result of rapidly increasing real estate values, investors want to "cash in" on the boom. As a result of this desire, Wall Street decided to create investment vehicles which would fund and manage bundles of subprime deeds of trusts. This led to the proliferation of special tax treatment vehicles known as Real Estate Deeds of trust Investment Conduit (hereinafter "REMIC").

81. The REMIC is formed as a trust, corporation, or limited liability company. Created as a result of the Tax Reform Act of 1986, such an investment vehicle is unique in the manner in which it pays taxes. Mainly, a REMIC allows its investors to avoid double taxation by "passing through" income to the holders of the REMIC'S Regular Interest and Residual Interests directly to individual investors.

82. The instruments used to "pass through" the income are "Deeds of trust Asset- I Backed Pass-Through Certificates" (hereinafter " MBCS"). These certificates are issued by the REMIC and sold to investors. The funds collected allow the REMIC to acquire several different loans within 90 days after its creation. The administration of a REMIC is governed by a "Deeds of trust Pooling and Servicing Agreement" (hereinafter "MPSA"). This document identifies a "Master Service?", who services the loans in the pool, a "Primary" or "Sub-Servicer", who usually is the originator of the loan and delegated duties by the Master Servicer, and the "Trustee" who is responsible for holding loan documents and distributing payments to the holders of the MBCS.

83. As the housing boom went into full swing, REMIC's were able to buy up and service pools of subprime loans. In addition, investing in these vehicles created higher return simply based upon cause and effect. Mainly, as housing prices rose, the corresponding risk associated with subprime deeds of trusts secured by the MBCS dropped. The foregoing dramatically raised the REMIC'S rating. This caused more and more investors to jump into the subprime loan market and therefore increased demand for the origination of such loans.

84. Based upon the easy funding provided by MBCS, coupled with lending guidelines that had greatly departed from federal lending guidelines, borrowers who had once been required to provide detailed proof of their income, source of down payment, credit history, debt, and the value of the secured property, suddenly qualified for loans with little or no verification at all. In addition, they were able to obtain loans the value of which greatly exceeded the value of the subject property. Finally, as these loans were subprime, their interest rate was certain to jump dramatically within a short period of time after origination. However, the "bubble" was soon to "burst".

*Market Decline Leads to Non-Judicial Foreclosure*

85. Unfortunately, by late 2006, real estate values hit a sharp decline. Shortly thereafter, the economy hit a 20 year low. The borrowers who had obtained the subprime loans funded by the MBCS were negatively impacted by the economy and therefore unable to keep up with the payments on the subprime loans secured on their property. In addition, in many case, their interest rate had already adjusted upwards. As a result, borrowers began to default on these loans. Under California Civil Code Section 2923.5, lenders were required to counsel borrowers "in person" or "by telephone" before recording a notice of default. However, all of the defendants in this action merely ignored this requirement.

86. The Plaintiff in this action was amongst those victimized. As a result of the above-described circumstances, many of the Plaintiff properties were placed into the non judicial foreclosure process pursuant to the dictates of Civil Code Section 2924a et. al. However, as history has shown, "the house always wins" and Defendants were therefore able to successfully exploit Civil Code Section 2924a to their advantage despite the irreparable harm it did to borrowers like Plaintiff, despite the fact that doing so has; 1) destroyed Plaintiff credit, 2) drained. all of their financial resources, and, 3) caused them to lose possession of their propertiess as a direct result of illegal foreclosure sales.

*Sham Foreclosure Sales Allow Defendant to Reap Tax Benefits*

87. California is considered a "non judicial" foreclosure state. Importantly, when a borrower is delinquent in making payments, a "non judicial" foreclosure allows the property to be sold at a public auction.

88. The process begins when a "Notice of Default" is recorded against the subject property. A couple of months later a trustee company, (one which takes possession of the deed for the sole purpose of sale), substitutes in as the beneficiary so that it can be sold. Finally, a "Notice of Trustee's Sale" is issued. This document identifies the minimum bid, (usually the amount owed on the delinquent loan), that the lender is seeking at the sale. All of the foregoing events are required to be published in a newspaper of general circulation.

89. On the day of the sale, a public auction conducted within the dictates of Civil Code Section 2924a et, al. supposedly occurs. However, at the time set for sale the auctioneer does not show, thereby leaving the bidders scratching their heads as no public sale actually occurs. Several days later when the deed from the subject property records, the title issued by the trustee company on its face improperly and incorrectly states that an auction took place and that cash was paid.

90. However, the sale is a sham as the purchaser of the property is in fact the REM]C which ironically already owns the loan. This is reflected by the fact that the subject property is now in the naive of the RENIIC which secured its MBCS on the subject property. In addition, the deed will reflect a purchase price which is usually 60% less than the minimum bid sought at the auction.

91. Although on its face this appears to be a legitimate sale, in reality it is a complete and total sham as; 1) no consideration was actually paid, 2) the REMIC is not -.a "bona fide

purchaser" within the meaning of Civil Code Section 2924a, 3) the sham sale was conducted for the purpose of allowing the holders of the MBCS to avoid federal tax liability, and, 4) the REMIC is able to insure that the face value of the MBCS are maintained.

92. The logic for engaging in the above highly illegal conduct is simple. Were the lender to retake ownership of the subject property, Internal Revenue Code 1038 forbids it from claiming a loss. However, by orchestrating the above described scam, the lender is able to claim a loss. Specifically, the REMIC makes a determination as to the maximum amount of tax benefit it can claim. It then subtracts this amount from the balance due on the defaulted loan. The difference between these numbers is then placed on the deed after the sale as the amount the REIVIIC supposedly tendered for the subject property.

93. Since the lender is normally the servicer, this "loss" directly benefits the holders of the MBCS. These holders can claim the loss as an offset to revenue, with the end effect being a tax-fee stream of revenue. However, they now possess a property on which they have collected "pass through" income from the borrower over the last several years. As a result, they have obtained multiple benefits through; 1) several years of interest income, 2) a substantial "loss" which will allow the MRCS to offset taxation on that income, 3) a property that it owns free and clear, and, 4) the ability to encumber the property so as to create a stream of income without incurring capital gains tax liability.

### *Plaintiff are the Losers in the End*

94. Plaintiff is a victim and eventual losers at the end of the aforementioned scheme. If Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC,

Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans would have followed the required lending standards, discussed supra, Plaintiff would have obtained an affordable loan or been denied the loan that eventually led to their forcible removal from their properties and destruction of their credit.

95. Plaintiff, as a result of the scheme perpetrated against him and other borrowers , are forced to incur thousands of dollars in fees in an effort to modify these predatory loans.

96.

97. As a direct result of the acts complained of, Dr. Yuen has been caused to suffer great mental anguish, economic and emotional damages and claim from the defendants all damages allowable under the law.

## COUNT 2

### FDCPA § 1692f

98. Plaintiff incorporates and re-alleges paragraphs 1-97 above.

99. 15 U.S.C. § 1692f in pertinent part provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

100. Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans violated 15 U.S.C. sec 1692f.

## COUNT 3

### FDCPA § 1692e(2)(A)

101. Plaintiff incorporates paragraphs 1-100 above.

102. 15 U.S.C. §1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" and sets forth activities that violate this section, including 15 U.S.C. §1692e(2).

103. 15 U.S.C. §1692e(2) provides in pertinent part that a debt collector violates this section with the following activity:

The false representation of (A) the character, amount, or legal status of any debt.

104. The Notice of Default filed in  the foreclosure action against Dr. Yuen that Trustee' claimed they had the right to collect a debt was a false representation of the character, amount, or legal status of the debt.

105. The Notice of default was sent  by Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans

106. Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans violated 15 U.S.C. §1692e(2)(A).

## COUNT 4

### FDCPA § 1692e(5)

107. Plaintiff incorporates paragraphs 1-106 above.

108. 15 U.S.C. §1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" and sets forth activities that violate this section, including 15 U.S.C. §1692e(2).

109. 15 U.S.C. § 1692e(5) provides in pertinent part that a debt collector violates this section with the following activity:

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

110. Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage

Loans threatened and took an action that could not legally be taken when it filed the foreclosure prior to the deeds of trust and note being assigned to their client.

111. Defendants violated 15 U.S.C. §1692e(5).


## COUNT 5

### NEGLIGENCE

112. Plaintiff incorporates paragraphs 1-111 above.

113. Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans are seeking to repossess Dr. Yuen from the properties he rightfully owns since the foreclosure actions are voidable.

114. As a direct result of defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans' negligence, Dr. Yuen has been injured and damaged as alleged above and has suffered mental anguish, economic injury and all other damages allowed by law.


115. As a result thereof, the Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans are liable for all natural, proximate and consequential damages due to its negligence.


## COUNT 6

### WANTONNESS

116. Plaintiff incorporates paragraphs 1-115 above.

117. Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans with reckless indifference to the consequences, consciously and intentionally acted to disposess Dr. Yuen from the properties he rightfully owns.

118. Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans with reckless indifference to the consequences, consciously and intentionally instituted this action with the knowledge that the properties of Dr. Yuen were mortgaged fraudulently.

119. These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits for the defendants.

120. As a result thereof, Defendants Mortgage Electronic Systems Inc,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans are liable for all natural, proximate and consequential damages due to their wantonness as well as punitive damages upon a proper evidentiary showing.

**COUNT 7     FCRA VIOLATIONS (TO BE ADDED IN AMENDED COMPLAINT)**

**COUNT 8     ULTRA VIRES  (TO BE ADDED IN AMENDED COMPLAINT)**

**COUNT 9 SECURITES FRAUD (TO BE ADDED IN AMENDED COMPLAINT)**

## SLANDER OF TITLE

131. Plaintiff incorporates paragraphs 1-130 above.

132. Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans, in filing a notice of default – which is void - has caused a cloud to be placed on the title of the property of Dr. Yuen.

133. As the proximate cause of Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans' said slandering of Dr. Yuen' title, Dr. Yuen was caused to suffer injuries and damages and claim all damages allowable under law and is still suffering such damages.


## COUNT 10

## RESPONDEAT SUPERIOR LIABILITY

134. Plaintiff incorporates paragraphs 1-110 above.

135. Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans hired, directed, or controlled the actions of the Quality Loan Service Corporation and its employees and associates.

136. Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans serves at the leisure of both the Trust and Trustee and / or is a part of a joint venture with the Trust and Trustee. These parties are alleged, upon information and belief, to be engaged in a

47

civil conspiracy to engage in conduct which is unlawful for the purpose of unjustly enriching the members or participants in the joint venture.

137. Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans is liable in tort for all of the wrongful actions of its agent, employee or servants.

138. Dr. Yuen claims all damages allowable under law for these wrongful actions.

## COUNT 11

## NEGLIGENT OR WANTON HIRING, SUPERVISION, TRAINING OR RETENTION

139. Plaintiff incorporates paragraphs 1-138 above.

130. Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans negligently or wantonly hired, trained, supervised or retained the other defendants as agents, trustees or law firms.

141. As a result of this negligence or wantonness, depending on evidence adduced, Dr. Yuen was injured and damaged by the actions of Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans.

142. As a result, Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans is liable for all damages proximately and directly flowing from these actions by their agent, employee or servants.

## COUNT 12

### JOINT VENTURE LIABILITY

143. Plaintiff incorporates paragraphs 1-142 above.

144. All defendants are part of a joint

venture as defined by controlling law.

145. Each member of a joint venture is jointly and severally liable for any tortious act

of any member of the joint venture against Dr. Yuen.

146. As a result thereof, the Plaintiff re-alleges in its entirety the complete third party

complaint against All defendants as grounds for their joint venture liability.

147. As a result of the actions of the joint venturers, Dr. Yuen has been injured and

damaged as heretofore alleged.

148. Dr. Yuen claims all damages as allowed by law for the wrongful acts of the

joint venturers against them.


## COUNT 13

### WRONGFUL FORECLOSURE

149. Plaintiff incorporates paragraphs 1-148 above.

150. Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC,

Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans Defendants

have initiated a foreclosure proceeding against Dr. Yuen in violation of law.

151. The initiation of the foreclosure proceeding by defendants Mortgage Electronic

Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust,

Citibank, GMAC Mortgage, Saxon Mortgage Loans was either negligent or wanton, depending on proof adduced at trial.

152. As a result thereof, defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans are liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages upon a proper evidentiary showing.

## COUNT 14

### UNJUST ENRICHMENT

153. Plaintiff incorporates paragraphs 1-152 above.

154. The actions of defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans in -foreclosing on the properties of Dr. Yuen in violation of law resulted in All defendants being unjustly enriched by the payment of fees, insurance proceeds and equity in the properties.

155. As a result of the defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans' unjust enrichment, Dr. Yuen has been injured and damaged in that Dr. Yuen has lost his credit worthiness and has lost equity in his properties resulting in financial and emotional damages including mental anguish.

156. Dr. Yuen claims all damages allowable under law as a result of the All defendants wrongful conduct and unjust enrichment.

## COUNT 15

### CIVIL CONSPIRACY

157. Plaintiff incorporates paragraphs 1-156 above.

158. Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans engaged in an unlawful combination and conspiracy to foreclose on properties loans against individuals for the purpose of unjustly enriching themselves in violation of law. This unlawful activity had the effect of unjustly enriching the joint venturers and conspirators.

159. As a result of this civil conspiracy, civil wrongs were committed against Dr. Yuen and other consumers. The motivation for the civil conspiracy was third party defendant's greed.

160. As a result of the civil conspiracy Dr. Yuen claims all damages allowed by law.

## COUNT 16

### FRAUDULENT MISREPRESENTATION

161. Plaintiff reaffirms and re-alleges the above paragraphs hereinabove as if set forth more fully here in below.

162. The title taken to the property by the Defendants Mortgage Electronic Systems Inc, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans is of no effect and void because the underlying foreclosure was commenced in violation of law on one or more of the following grounds:

a) The foreclosing entity lacked standing to foreclose; that is, it did not own the note and

deeds of trust at the time that it instituted the foreclosure action.

b) The foreclosure was taken in violation of law in that the foreclosing entity did not own the property upon which it foreclosed and therefore could pass no legal title to the lands it claimed to foreclose nor could it acquire legal title to the lands that it foreclose upon.

c) The foreclosure process was taken in violation of law in that the default was exaggerated, inflated and based upon improper and illegal deeds of trust servicing practices on the part of the foreclosing entity and its agents or employees.

d) The foreclosure sales if taken place, are voidable in that any foreclosure sale completed is by fraud, deceit
or trickery on the part of the foreclosing entity and its agents, employees or servants in that the foreclosing parties represented that they would delay the foreclosure but then failed to do so.

e) The foreclosing entity failed to strictly comply with the requirements set out in California law and the contract between the parties, with respect to notice, time and place and other legal provisions thereby rendering the foreclosure void.

f) The foreclosing entity failed to engage in loss mitigation required by its agreements and federal servicing guidelines which the entity is subject to, and because of the failure of the condition precedent to foreclosure the acceleration and default were invalid and illegal and renders the foreclosure void.


## COUNT 17

### VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT

173. Plaintiff reaffirms and re-alleges paragraphs above herein as if specifically set forth more fully here in below.

174. As deeds of trust lenders, Defendants are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 USC sec. 2601 et seq.

175. In violation of 12 USC sec. 2607 and in connection with the deeds of trust loan to Plaintiff, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed.

176. As a result of the Defendants' violations of RESPA, Defendants are liable to Plaintiff in an amount equal to three (3) times the amount of charges paid by Plaintiff for "settlement services" pursuant to 12 USC sec. 2607(d)(2).

## COUNT 18

### VIOLATIONS OF FEDERAL TRUTH-IN-LENDING ACT

177. Plaintiff reaffirms and re-alleges paragraphs above hereinabove as if set forth more fully here in below.

178. Defendants failed to include and disclose certain charges in the finance charge shown on the TIL statement, which charges were imposed on Plaintiff incident to the extension of credit to the Plaintiff and were required to be disclosed pursuant to 15 USC sec. 1605 and Regulation Z sec. 226.4, thus resulting in an improper disclosure of finance charges in violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(d). Such undisclosed charges include a sum identified on the Settlement Statement listing the amount financed which is different from the sum listed on the original Note.

179. By calculating the annual percentage rate ("APR") based upon improperly calculated and disclosed amounts, Defendants are in violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(c), 18(d), and 22.

180. Defendants' failure to provide the required disclosures provides Plaintiff with the right to rescind the transaction, and Plaintiff, through this public Complaint which is intended to be construed, for purposes of this claim, as a formal Notice of Rescission, hereby elect to rescind the transaction.

## COUNT 19

## VIOLATION OF FAIR CREDIT REPORTING ACT

181. Plaintiff reaffirms and re-alleges paragraphs above as if set forth more fully here in below.

182. At all times material, Defendants qualified as a provider of information to the Credit Reporting Agencies, including but not limited to Experian, Equifax, and TransUnion, under the Federal Fair Credit Reporting Act. 65. Defendants wrongfully, improperly, and illegally reported negative information as to the Plaintiff to one or more Credit Reporting Agencies, resulting in Plaintiff having negative information on their credit reports and the lowering of their FICO scores.

183, Pursuant to 15 USC sec. 1681(s)(2)(b), Plaintiff are entitled to maintain a private cause of action against Defendants for an award of damages in an amount to be proven at the time of trial for all violations of the Fair Credit Reporting Act which caused actual damages to Plaintiff, including emotional distress and humiliation.

184. Plaintiff are entitled to recover damages from Defendants for negligent non-compliance with the Fair Credit Reporting Act pursuant to 15 USC sec. 1681(o).

185. Plaintiff are also entitled to an award of. punitive damages against Defendants for their willful noncompliance with the Fair Credit Reporting Act pursuant to 15 USC sec. 1681(n)(a)(2) in an amount to be proven at time of trial.

## COUNT 20

## FRAUDULENT MISREPRESENTATION

186. Plaintiff reaffirms and re-alleges paragraphs above as if set forth more fully here in below.

187. Defendants knowingly and intentionally concealed material information from Plaintiff which is required by Federal Statutes and Regulations to be disclosed to the Plaintiff both before and at the closing.

188. Defendants also materially misrepresented material information to the Plaintiff with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

189. Under the circumstances, the material omissions and material misrepresentations of the Defendants were malicious.

190. Plaintiff, not being investment bankers, securities dealers, deeds of trust lenders, deeds of trust brokers, or deeds of trust lenders, reasonably relied upon the representations of the Defendants in agreeing to execute the deeds of trust loan documents.

191. Had Plaintiff known of the falsity of Defendants' representations, Plaintiff would not have entered into the transactions the subject of this action.

192. As a direct and proximate cause of the Defendants' material omissions and material misrepresentations, Plaintiff have suffered damages.

## COUNT 21

### BREACH OF FIDUCIARY DUTY

193. Plaintiff reaffirms and re-alleges paragraphs above as if set forth more fully here in below.

194. Defendants, by their actions in contracting to provide deeds of trust loan services and a loan program to Plaintiff which was not only to be best suited to the Plaintiff given their income and expenses but by which Plaintiff would also be able to satisfy their obligations without risk of losing their properties, were "fiduciaries" in which Plaintiff reposed trust and confidence, especially given that Plaintiff were not and are not investment bankers, securities dealers, deeds of trust lenders, deeds of trust brokers, or deeds of trust lenders.

195. Defendants breached their fiduciary duties to the Plaintiff by fraudulently inducing Plaintiff to enter into a deeds of trust transaction which was contrary to the Plaintiff' stated

intentions; contrary to the Plaintiff' interests; and contrary to the Plaintiff' preservation of their properties.

196. As a direct and proximate result of the Defendants' breaches of their fiduciary duties, Plaintiff have suffered damages.

197. Under the totality of the circumstances, the Defendants' actions were willful, wanton, intentional, and with a-callous and reckless disregard for the rights of the Plaintiff justifying an award of not only actual compensatory but also exemplary punitive damages to serve as a deterrent not only as to future conduct of the named Defendants herein, but also to other persons or entities with similar inclinations.

## COUNT 22

## UNJUST ENRICHMENT

198. Plaintiff re-alleges and reaffirms paragraphs above as if set forth more fully here in below. Defendants had an implied contract with the Plaintiff to ensure that Plaintiff understood all fees which would be paid to the Defendants to obtain credit on Plaintiff' behalf and to not charge any fees which were not related to the settlement of the loan and without full disclosure to Plaintiff.

199. Defendants had full knowledge that a "bait and switch" adjustable rate predatory deeds of trust with an increase in the interest rate due to the YSP paid to the Broker for the "up sell" was not in the Plaintiff best interests.

200. Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees. rebates, kickbacks, profits and gains and YSP fee unrelated to the settlement services provided at closing.

201. Defendants have been unjustly enriched at the expense of the Plaintiff, and maintenance of the enrichment would be contrary to the rules and principles of equity.

202. Plaintiff thus demand restitution from the Defendants in the form of actual damages, exemplary damages, and attorneys' fees.

## COUNT 23

## CIVIL RICO

203. Plaintiff reaffirms and re-alleges paragraphs above as set forth more fully here in below.

204. Defendants are "persons" as defined by

205. The conspiracy the subject of this action has existed from date of application to the present, with the injuries and damages resulting therefrom being continuing.

206. Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiff constitutes an "enterprise.", with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiff through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents.

207. Each of the Defendants is an "enterprise Defendant".

208. As a direct and proximate result of the actions of the Defendants, Plaintiff have and continue to suffer damages.


## COUNT 24

## REFORMATION OF CONTRACT AGAINST DEFENDANT ORIGINATORS

## SERVICERS AND REM1CS ONLY

209. Plaintiff incorporate herein by this reference each and every allegation contained in paragraphs 1 through 208 hereinabove as through fully set forth below.

210. Defendant Originators, Defendant Servicers, and Defendant REMICS and each of them, have knowingly concealed material facts and alternatively made false representations to Plaintiff as follows:

a. Through intentionally concealing the value of Plaintiff' properties in order to be able underwrite inflated, subprime, and profitable loans;

b. Through falsely informing Plaintiff that their properties had been sold for a specific sum at a valid foreclosure sale when .in fact the foreclosure sale was a sham....and... the...tender....of...the specific sum had never occurred;

c. Through concealing the fact from Plaintiff that his loans were owned by certificate holders which would facilitate a sham foreclosure sale in order to reap gigantic tax benefits equivalent to receiving payment on 70-100% of the principal of the loan;

d. By representing that they had complied with the dictates of California 8 Civil       Code Section 2923.5 in counseling Plaintiff "in person" or "by telephone" to explore options to foreclosure prior to recording a notice of default;

211. Defendant Originators, Defendant Servicers, and Defendant REMICS and each of them through engaging in the above conduct, were _ able . to enter into. written agreements with Plaintiff in the form of deeds of trust and promissory notes secured by Plaintiff respective properties. Because of the above-described fraud, these deeds of trust and promissory notes do not express the true intentions of the parties.

212. Plaintiff and. Defendants have a complete mutual understanding of the essential terms of the contract, in' that Plaintiff understood that their respective properties would be encumbered by a loan which was procured for the purpose of acquiring the subject property. However, Plaintiff are the aggrieved parties in that they were not aware of the facts described above at the time they executed the contract.

213. As a result of Plaintiff' ignorance of Defendants' true intentions, Plaintiff

are entitled to have their deeds of trust and accompanying promissory notes reformed to show the true intention of the parties.

## COUNT 25

## INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

214. Plaintiff incorporate herein by this reference each and every allegation contained in paragraphs 1 through 213 hereinabove as though fully set forth herein.

215. Plaintiff are entitled to a preliminary injunction under Federal Rules of Civil Procedure 65 providing that Defendant Originators, Servicers, and REMICS return possession of Plaintiff property to them forthwith or that Defendant Trustee Companies abstain from conducting such sales based upon the facts that; 1) the foreclosure sale of Plaintiff properties was a sham, 2) the sales which are set and which have not been conducted have failed to comply with the counseling requirements delineated in Civil Code Section 2923.5, and 3) These defendants are obligated to service Plaintiff original loan for the price reflected on the deed recorded after sale.

216. If a preliminary injunction is not entered by this Court, Plaintiff will suffer immediate and irreparable harm for there is no adequate remedy at law.. Plaintiff has no adequate remedy at law, and there is a substantial likelihood that Plaintiff will prevail on the merits at trial. The request for injunctive relief is narrow in scope and will preserve the party's rights until trial of this cause.

## COUNT 26

## DECLARATORY RELIEF AGAINST ALL DEFENDANTS

217. Plaintiff incorporate herein by this reference each and every allegation contained in paragraphs 1 through 216 hereinabove as though fully set forth herein.

218. An actual controversy has arisen and now exists between Plaintiff and all Defendants concerning   his rights in regard to his respective interests and rights in the properties subject of this action based upon; 1) the non-judicial foreclosure proceedings which were instigated, and, 2) whether the pre-counseling notice requirements delineated in Civil Code Section 2923.5 have in fact been followed.

61

219. Based upon the foregoing, Plaintiff desires a judicial determination of their rights and duties in regards to the properties subject of this action.

## COUNT 27

### FRAUD BY CONCEALMENT AGAINST ALL DEFENDANTS

212. Plaintiff incorporate herein by this reference each and every allegation contained in paragraphs 1 through 219 hereinabove as though fully set forth herein.

213. Defendants, and each of them, were parties to contractual agreements with Plaintiff as Defendants were able to enter into written agreements with Plaintiff in the form of deeds of trust and promissory notes secured by Plaintiff respective properties.

214. Plaintiff are informed, believe, and thereon allege that. Defendants, and each of them, knowingly, intentionally, or through tacit encouragement suppressed the true fact that Plaintiff properties loans had been purchased by a REMIC.

215. Plaintiff are informed, believe, and thereon allege those Defendants, and each of them, knowingly, intentionally, or through tacit encouragement suppressed the true fact that a valid foreclosure sale of the Plaintiff properties never actually took place.

216. Plaintiff are informed, believe, and thereon allege those Defendants, and each of them, knowingly, intentionally, or through tacit encouragement suppressed the true fact that the REMIC who already owns the loan took title to Plaintiff property at the sham foreclosure sale.

217. Plaintiff are informed, believe, and thereon allege those Defendants, and each of them, knowingly, intentionally, or through tacit encouragement, suppressed the true fact that no funds were actually transferred from the REMIC to the trustee at the time of sale.

218. At the time these failures to disclose and suppressions of facts occurred, and at the time Plaintiff took the actions herein alleged, Plaintiff were ignorant as to the existence of the aforementioned facts that the Defendants suppressed and failed to disclose.

219. Each of the aforementioned acts of suppression and concealment were committed by Defendants, and each of them, with the intent to deceive the Plaintiff with whom Defendants contracted for the purposes of greed and profit.

220. Plaintiff justifiably relied on the misrepresentations of Defendants due to Defendants' authority, positions, capacity, and expertise, resulting in a contractual agreement that did not reflect the Plaintiff' true intent.

221. As a proximate result of above described fraud, Plaintiff was induced to pay an excessive price for his properties, face possibility of losing his properties in foreclosure as a result of these excessive prices, and have had their credit destroyed based upon their default being reported to the credit bureaus. As a result, Plaintiff has been damaged in a manner that will allow them to have their deeds of trust and accompanying promissory notes reformed to show the true intention of the parties. In addition, Plaintiff has suffered monetary damages in amount which will be proven at the time of trial.

222. The above actions by Defendants were intentional and done with fraud, oppression, malice, and with conscious disregard for the safety and rights of others merely for monetary gain

with no socially redeeming value whatsoever. As a result, Plaintiff is entitled to an award of punitive damages against them.

## COUNT–28 RESPA VIOLATIONS

223.    Plaintiff incorporates paragraphs 1-222.

224.    Plaintiff's loan in this transaction is subject to the Real Estate Settlement Procedures Act ("RESPA"). Defendants knowingly reported overdue payments, false derogatory reports, in violation of RESPA 12 USC Sec. 2605(e)(3) and the Fair Credit Reporting Act [15 USC 1681] Sections 616, 617 and 623. (see portions of Plaintiff's credit reports showing derogatory reports – Exhibit ).

225.    Defendants Chase Manhattan Mortgage,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans failed to adequately reply to Plaintiff's Qualified Written Request by declining his request to receive a copy of his pooling and servicing agreement which directly pertains to Plaintiff's inquiry concerning disbursement of his payments (see Exhibit A).

226.    Further, Defendants  Chase Manhattan Mortgage,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans did not give an adequate explanation as to why the requested information was unavailable (see Defendants' response - Exhibit C).

227.    Defendants Chase Manhattan Mortgage,  Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans also

failed to adequately respond to Plaintiff's Qualified Written Request dated  2009

(Exhibit A) by not responding in a timely manner (see Defendants' response dated

_____, 2009 - Exhibit R).

228.    Defendants' Chase Manhattan Mortgage,  Bank of America, Aurora Loan Services,

LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans

conduct violated 12 USC Section 2605(e). All of Plaintiff's Qualified written requests

properly conformed to 12 USC Section 2605(e)(1)(B), which does not restrict inquiries

to matters of 'servicing'.  Plaintiff is entitled to costs and damages up to $1000 for

each violation.


        Jurisdiction is invoked under 28 U.S.C. Sec. 1332 and involves diversity of citizenship and more than $10,000 in controversy and jurisdiction is further invoked under 42 U.S.C. 1983 et seq. and 18 U.S.C. Sec. 1964 as well as the Constitution of the United States and in particular the 7th amendment as this is a "suit at common law."  This Complaint is filed in propia persona pursuant to Haines vs. Kerner, 404 U.S. 519.


## COUNT 29   BREACH OF CONTRACT

The averments of the previously numbered paragraphs are restated by reference herein.

Defendants' Chase Manhattan Mortgage,  Bank of America, Aurora Loan Services, LLC,

Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans failed to

lend the plaintiff lawful money of the United States and instead substituted a check with the

intended purpose of circulating it as money.

## COUNT 30  FRAUD AND RACKETEERING

The averments of the previously numbered paragraphs are referred to by reference herein. Defendants' Chase Manhattan Mortgage, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans and their officers, and the of the Federal Reserve Bank of and the Board of Examiners are all parties to the writing and processing of a check written by the [name of bank] on or about [date of loan]. All these parties are in collusion in using the U.S. Mails and Wire Services to collect on these unlawful debts in violation of 18 U.S.C. 1341 (mail fraud) and 18 U.S.C. 1343 (wire fraud) and 18 U.S.C. 1962 in establishing a "pattern of racketeering activity." Plaintiff ask for triple damages for actual and compensatory damages sustained pursuant to 18 U.S.C. 1964 from each and every defendant on all counts.

**COUNT 31        USURY AND RACKETEERING.**

The averments of the previously numbered paragraphs are restated by reference herein. By virtue of Defendants' Chase Manhattan Mortgage, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans activities in creating an unlawful debt by passing bad checks, Defendants' Chase Manhattan Mortgage, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans have collected and annual interest rate estimated to be ten times greater than the amount of interest the plaintiff agreed to in the note they signed. This violation of contract law and usury laws is due to the fact that the actual amount of lawful money risked by the bank in making the loan was less than 10% of the loan's face value.

**RELIEF REQUESTED**

1. The plaintiff ask the court to empanel a Grand Jury to investigate the Defendants' Chase Manhattan Mortgage, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans , for violations of Federal Antitrust laws and the Federal Racketeering laws including 18 U.S.C. 1341 (mail fraud) and 18 U.S.C. 1343 (wire fraud) and 18 U.S.C. 1962 (pattern of racketeering activity) and 18 U.S.C. Sec. 241 for conspiracy to violate the plaintiff and other citizens Constitutional rights.

2. Plaintiff ask for actual damages for the sum of the amount paid on each loan and compensatory damages to be determined as well as three times this amount in punitive damages against each defendant convicted on any count.

3. Plaintiff demand a trial by jury to be comprised of 12 members to determine all issues of facts in dispute and to determine and award all damages.

4. Plaintiff ask for a court order declaring the [mortgage, mortgage note, deed of trust, note, security agreement etc.] to be null and void.

5. An injunction against Defendants' Chase Manhattan Mortgage, Bank of America, Aurora Loan Services, LLC, Deutsche Bank National Trust, Citibank, GMAC Mortgage, Saxon Mortgage Loans the to divest themselves of any assets they have unlawfully gained and to return the same to the plaintiff and all other debtors or injured parties.

**WHEREFORE,** Dr. Yuen, having set forth his claims for relief against All defendants respectfully request of the Court as follows:

6. That Dr. Yuen have and recover against All defendants a sum to be determined by a jury of his peers in the form of actual damages;

7. That Dr. Yuen have and recover against All defendants a sum to be determined by a jury of his peers in the form of punitive damages;


8. That this Court enter an order voiding the foreclosure action of the Plaintiff; and

9. That Dr. Yuen have such other and further relief as the Court may deem just and proper and equitable given the facts of the case.


**DEMAND FOR JURY TRIAL**

Dr. Yuen hereby demands a trial by jury on all claims so triable before the Court.


Dr. Kam Yuen

68

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV09- 7417 PSG (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.